The questions presented in this case are of unusual interest. The principles regulating the admission of evidence in mitigation of damages, in actions for libel and oral slander, have given rise to much controversy and many conflicting decisions. The courts have struggled for more than a century with the incongruous rules which have prevailed on this subject.
An attempt has been made, through a provision of the code, to remove the difficulty. Section 165 provides, that in this class of actions the defendant "may in his answer allege both the truth of the matter charged as defamatory, and any mitigating *Page 358 
circumstances to reduce the amount of damages; and whether he prove the justification or not, he may give in evidence the mitigating circumstances." It is desirable that such a construction should be put upon this provision as will make the remedy it affords coextensive with the evils it was designed to remove.
What, then, were those evils? To answer the inquiry, it becomes necessary to glance at some of the principles which lie at the foundation of this class of actions. It will not be denied that malice on the part of the defendant is essential to the maintenance of the action. This is distinctly asserted by every elementary writer on the subject, and is confirmed by all the cases. But it is said that there need be no express malice, except in the case of privileged communications; that in other cases, implied or legal malice is all that is required. What is meant by implied malice? Does it mean malice which the law imputes without any proof of its existence? I apprehend not. It means this: that the fact that the defendant is shown to have uttered or published a false charge against another, which was calculated to injure him, proves that the defendant was actuated by malicious motives, unless the circumstances are such as to suggest some other and innocent motive. This is nothing more than the application of a familiar rule of evidence, viz. that every person is presumed to intend that which is the natural consequence of his actions. Where, however, the circumstances are such as afford ground for supposing an innocent and laudable motive — as where the charge is made in giving the character of a servant, or confidential advice to a friend — then the presumption which would otherwise arise from the falsity and injurious nature of the charge is repelled, and it becomes necessary to offer other evidence of malice. But is malice any more the ground of the action in cases of privileged communication than in others? Clearly not. It is called, for the sake of convenience, express malice in the one case, and implied in the other; but the malice is the same; the difference is in the proof alone. We may therefore assume, that in all cases
malice is *Page 359 
essential to the action. Not imputed malice merely, but actual malice; malice established by proof.
Our next inquiry is, whether the degree of malice has any bearing upon the measure of damages? If malice is an essential ingredient in the cause of action, it would seem to follow that the damages should be graduated more or less by the degree of malignity displayed. But it may be said that the object of the action is to obtain compensation for a personal injury, and that the extent of that injury does not depend upon the malice or innocency of intent of the defendant. I fully appreciate the general truth, that civil actions are designed to redress private and not public wrongs; and yet every one knows that the value of the administration of our civil jurisprudence consists not alone in the wrongs it redresses, but in those it prevents; and especially is this true of the class of actions we are considering. It will be found that, from the origin of the common law, all those actions which impute malice to the defendant have been used to some extent to protect the public interests, and to repress the indulgence of those vindictive feelings which tend to disturb the peace of society. In this view the damages should, to some extent, be measured by the degree of malice proved.
But it is useless to speculate upon the question. There are numerous decisions going to establish the doctrine, that proof of positive malice on the part of the defendant, in this class of actions, has a legitimate tendency to enhance the damages. I shall refer to a few of the cases only. In Defries v. Davis,
(7 Car. Payne, 112,) which was an ordinary action of slander, the plaintiff offered evidence of a repetition of the slander, in aggravation of damages. Tindal, Ch. J., said: "You may shew any thing that is evidence of malice, but you must not shew any thing that would be the subject of another action." In Bromage v.Prosser, (4 Barn. Cress. 247,) Bayley, J., says: "But in an ordinary action for a libel or for words, though evidence of malice may be given to increase the damages, it never is considered essential." In the case of Root v. Lowndes, (6Hill, 518,) Judge Bronson, while he condemns and *Page 360 
overrules the English nisi prius cases, which admit proof of the publication by the defendant of libels or slanders other than those charged, for the purpose of showing quo animo the charge was made, nevertheless holds, that a repetition of the same slander is admissible, citing the case of Defries v. Davis,
(supra.) This court, too, in Howard v. Sexton, (4 Comst. 157,) has confirmed the doctrine. Gardiner, J., says: "The plaintiff may show a repetition of the charge for which the action is brought; but not a different slander for any purpose." Of course, in all these cases the evidence is held to be admissible, to enhance the damages. It could be received for no other legitimate purpose, as it would be wholly unnecessary to the maintenance of the action. There are many other authorities to the same effect; but these must, I think, be sufficient to sustain the position, that in an ordinary action of slander, although the malice necessary to maintain the action is implied from the falsity of the charge, the plaintiff may, nevertheless, give evidence of express malice in aggravation of the damages. The elementary works all hold the same language.
Assuming then, what cannot well be denied, that affirmative proof of malice may be received to aggravate the damages and enhance the verdict, in cases where no such proof is necessary to maintain the action, it inevitably follows that if the defendant can show that he was not actuated by any malicious motive, he will thereby mitigate the damages; and that he must be permitted to give evidence for that purpose. It is clear, therefore, that the defendant has a right to prove the absence of malice in mitigation of the verdict; and to do this, it is of course indispensible to prove that he believed, and had some reason to believe, the charge to be true, when it was made. But how is he to make this proof? There are but two conceivable modes of doing it. One, by proving that he had received such information from other persons as induced him to believe the charge to be true; the other, by showing the existence of facts and circumstances within his knowledge calculated to produce such a belief. Repeated efforts have been made by defendants to avail *Page 361 
themselves of the former of these modes. The general doctrine being conceded that a defendant had a right to repel malice for the purpose of mitigating the damages, there was plausibility at least in the position, that he should be permitted to show that he had been led into an honest belief of the truth of the charge by the information he had received. There has been much fluctuation upon this question in the English courts. But in this country the evidence has been rejected, for, as it appears to me, the soundest reasons. It has long been settled in this state and in Massachusetts, as well as most of the other states, that although evidence is admissible to prove the general character of the plaintiff to be bad, yet that no mere reports or rumors, not amounting to proof of general character, nor information obtained by the defendant from others as to the truth of the charge, unless accompanied by proof that such information is true, can be received for the purpose of rebutting the presumption of malice. This necessarily reduces the defendant to the proof of facts and circumstances known to him at the time of making the charge, having a tendency to induce a belief of its truth, as the only means of showing a want of malice. Here, however, the defendant has been met in this state by the rule, that no facts or circumstances having a tendency to establish the truth of the charge, could be given in evidence under the general issue to mitigate the verdict. Of course, facts and circumstances which would warrant the defendant in believing the charge, must besuch as would have some tendency to prove it to be true. This rule, therefore, effectually excluded the only evidence by which the absence of malice could be shown.
First, then, malice was presumed from the falsity of the charge; to this the plaintiff might superadd proof of positive malice, and thus aggravate the damages, while the defendant was precluded, by the rule which excluded all proof of facts tending to establish the truth of the charge, from giving any evidence to rebut malice in mitigation. Upon what did this rule of exclusion rest? Certainly not upon the intrinsic impropriety *Page 362 
of the evidence. This is clear from the positions already established. It must have had some other foundation: what was it? The answer to this question is both simple and certain. The rule is merely an unforseen consequence of that which excluded proof of the truth of the charge, under the general issue, in mitigation of damages; a rule which originated with the case ofUnderwood v. Parks, (2 Strange, 1200.) The courts have implicitly followed that case, without even seeming to consider that the rule it laid down, was not only a departure from the principles of the common law, and a pure piece of judicial legislation, but that, in its consequences, it must necessarily deprive defendants of all power to mitigate the verdict. Prior to that case, defendants in this class of actions were permitted to prove not only the absence of malice, but the truth of thecharge itself in mitigation. This is shown by the case ofSmithies v. Harrison, (1 Lord Ray. 727.) The reception of this evidence was in perfect accordance with the general principles of law. Courts have sometimes, in their speculations upon this subject, seemed to suppose that there was some inherent legal objection to proving, in mitigation merely, that which might amount to a justification; and have applied the rule which excludes proof of the truth of the charge in mitigation, as though that were its foundation. This however is an obvious error. It was never any objection to evidence in mitigation, that under a different state of the pleadings it would amount to a full defense. The rule in Underwood v. Parkes was not put upon any such ground. That was an action of slander. The defendant, under the plea of not guilty, offered to prove the words to be true, in mitigation of damages. The chief justice refused to permit it, saying, that, "At a meeting of all the judges upon a case that arose in the common pleas, a large majority of them had determined not to allow it for the future,
but that it should be pleaded, whereby the plaintiff might beprepared to defend himself, as well as to prove the speaking of the words." The very terms here used show, that this was the introduction of a new doctrine by the common consent of the judges. It is clear from *Page 363 
the reason given, that the intrinsic propriety or impropriety of the evidence had nothing to do with the adoption of this rule. It was a rule of pleading merely; having no other object than to prevent plaintiffs from being taken by surprise upon the trial, by evidence of the truth of the charge. It was not designed to deprive defendants of the benefit of such evidence, or any evidence; but simply to secure due notice to the plaintiff of what he would be required to meet. This was all very well in cases where the defendant was prepared to justify, which cases alone the judges had in view in adopting the rule. But when the doctrine came to be applied to cases where all the defendant could or desired to do was to mitigate the damages, by showing the absence of malice, it operated unjustly. It took away the right altogether, since the rules of pleading did not allow any thing short of a complete defense to be spread upon the record. The whole difficulty would have been obviated, if the judges had simply added to this rule a clause, permitting defendants to give with the general issue a notice of the facts intended to be proved in mitigation of damages. It would have been no greater stretch of power to have done this, than was required to prescribe the rule itself. But they evidently failed to foresee the conflict which must necessarily arise between the concededright of the defendant to mitigate the damages, by showing the absence of malice, and the rule they adopted; a conflict which can be clearly traced from that day to the present. The right
and the rule were directly repugnant to each other; and no question has ever given rise to a more protracted struggle.
The courts in England, under a sense of the admitted right, have in a number of cases decided, that facts and circumstancesfalling short of proving, although tending to prove the truth of the charge, might be received in mitigation. (Knobell v.Fuller, Norris' Peake, Append. 32; Leicester v. Walter, 2Camp. 251.) But the courts in this state and in Massachusetts, with less justice but better logic, have uniformly held that a rule which excluded proof of the truth of the charge, mustnecessarily exclude evidence tending to prove it. But it is a little *Page 364 
surprising to observe how often judges have asserted in the same paragraph, both the right to mitigate by disproving malice, and the rule which effectually precluded the exercise of the right, without any apparent consciousness of the conflict between the two. I will refer to a few only out of the many instances. In the case of Root v. King, (7 Cowen, 613,) judge Savage says, that the defendant "may show in evidence under the general issue, by way of excuse, any thing short of a justification which does not necessarily imply the truth of the charge or tend to prove it true, but which repels the presumption of malice arising from the fact of publication." The same judge, in Purple v. Horton,
(13 Wend. 9,) says: "Facts and circumstances may be shown in mitigation, when they disprove malice, and do not tend to prove the charge, or form a link in the chain of evidence to prove a justification." Again, Judge Bronson, in Cooper v. Barber,
(24 Wend. 105,) says: "Facts and circumstances which tend to disprove malice by showing that the defendant, though mistaken,believed the charge true when it was made, may be given in evidence in mitigation of damages. But if the facts and circumstances offered tend to establish the truth of the charge, or form a link in the chain of evidence going to make out a justification, they are not admissible in mitigation of damages." It does not appear to have occurred to either of these eminent judges, that there was any incongruity between the two branches of the proposition thus asserted by them. But it is certainly difficult to comprehend how a defendant is to disprove malice, by showing "that he believed the charge true when it was made," without giving evidence tending to establish its truth; since a belief based upon information derived from others cannot be shown.
If malice may be repelled for the purpose of mitigation, what reason is there why it should not be done by proof of facts tending to show the truth of the charge as well as of any other facts? None has ever been given, except that which led to the adoption of the rule in Underwood v. Parks, viz. that the plaintiff might be taken by surprise. But is that a sufficient reason for *Page 365 
depriving a defendant altogether of the benefit of such evidence? Clearly not; and yet this has been the effect of that rule, as construed by the courts of this state, when combined with the other rule, which precluded the pleading of matter in mitigation. The obvious injustice of this result has induced the courts in many of the states, as well as in England, to disregard the logical consequence of the rule in Underwood v. Parks, and admit the evidence. In a late case in the state of Connecticut,Williams v. Miner, (18 Conn. R. 464,) Church, Ch. J., says: "We are not satisfied that a defendant should be deprived of the benefit of mitigating circumstances, for no better reason than that they conduce to prove the truth of the charge, while theyfall short of it. We see no sufficient cause why he should not be permitted to prove such facts, as well as any other showing innocency of motive, and which can only be proved under the general issue." In this passage the chief justice expresses that dissatisfaction with the rule in question which has prevailed so extensively among judges. He also betrays the same misconception as to the foundation of the rule prohibiting proof of the truth
of the charge in mitigation, which appears to have been so nearly universal. He says: "for no better reason than that they conduce to prove the truth of the charge, while they fall short of it." This implies that there is some reason against proving thetruth of the charge in mitigation, which does not apply to evidence tending to prove, but falling short of proving it. The English cases of Knobell v. Fuller, and Leicester v.Walter, (supra,) and many other cases in this country, proceed upon the same idea. It seems to have been supposed that there was some sound legal objection, to admitting proof of facts under the general issue in mitigation merely, which, if specially pleaded, would amount to a full defense. But there is not, and never was, any such objection. It has been already shown that the rule which excludes proof of the truth of the charge in mitigation, had no such foundation.
We have now, I think, a clear view of one of the evils which required correction in this state. It was requisite either to restore *Page 366 
the ancient rule of the common law, and permit any evidence
going legitimately to disprove malice, to be given under the general issue without notice, or to provide some mode by which notice might be given.
But the was another evil especially calling for the interposition of the legislature. Defendants might have avoided in some measure the injurious effect of the rule prescribed inUnderwood v. Parks, as interpreted and enforced by the courts of this state, by putting in a plea of justification, and thus introducing their evidence, although it might not fully support the plea, for the purpose of having it considered by the jury in mitigation of the verdict. But here they were met by another rule somewhat gratuitously adopted by our courts. They held, not only that the putting in of such a plea, when not done in good faithand with proper motives, was an aggravation of the wrong, but that it was, under all circumstances, an admission of malice, and precluded the defendant from claiming any mitigation of damages on the ground of its absence.
I am at liberty to express my non-concurrence in this doctrine, because the legislature has abrogated it. In Massachusetts, where the courts had adopted the same rule, the legislature interposed long since. (See Stat. of 1826, ch. 107, § 2.) This statute, after providing that a plea of justification shall not be taken as evidence that the words were spoken, proceeds as follows: "Nor shall such plea of justification, if the defendant fail to establish it, be of itself proof of the malice of such words; but the jury shall decide upon the whole case, whether such plea was or was not made with malicious intent." Whether a plea of justification affords evidence of malice or not, must, as it seems to me, depend upon the state of the proof at the trial; and so our legislature, as well as that of Massachusetts, has evidently thought.
The evils, then, which called for the interposition of the legislature, were, as we see, two fold; and we are now prepared to put a construction upon the remedy which the code has provided. In Graham v. Stone, (6 How. Pr. R. 15,) an opinion *Page 367 
is intimated by Mr. Justice Johnson, that section 165 of the code does not authorize any facts to be set up in an answer in mitigation of damages, except in connection with a justification of the libel or slander; and this view is concurred in by Mr. Justice Harris, in Brown v. Orvis, (6 How. Pr. R. 376.) I do not so interpret the provision. Under that construction, the matter would be left in no better condition than before. It would even be worse. Because, as the law stood before the code, the defendant might have pleaded a justification, although he did not expect to be able fully to support it, in the hope that his mitigating proof introduced under the plea might, as it generally would, have some influence with the jury, notwithstanding thejudicial rule that he had thereby confessed the malice of the charge. But as he may now be required to put in his answer under oath, he would, upon the construction given to section 165, be deprived of every resource, unless his belief in the truth of the charge continued up to the time of putting in the answer.
To reach the evils which existed, therefore, a broader construction must be put upon the provision in question; and I see nothing in the phraseology of the section to prevent this. Its language is, that the defendant "may in his answer allege both the truth of the matter charged as defamatory, and any mitigating circumstances." This does not necessarily mean that he must connect them both together; that he cannot allege one without the other; but that he should not be prohibited from alleging either. Thus construed, this section exactly meets the evils to be remedied, and removes a reproach, which, as I think, with some justice, has been often cast upon the administration of the law of libel and slander by the court.
The facts set up in the answer in this case must, I think, if established by proof, have had some tendency to rebut the presumption of malice, and consequently to mitigate the damages; and therefore should, under the conclusions to which I have arrived, have been received in evidence. The judgment of the *Page 368 
supreme court should be reversed, and a new trial ordered, with costs to abide the event.
JOHNSON, J., also delivered an opinion to the same effect as the foregoing opinions.
GARDINER, Ch. J., and EDWARDS and PARKER, Js., concurred.
DENIO, J., dissented on the ground that the rule of law as held by the supreme court in this case, whether a wise one or not, was too well settled to be changed except by the legislature, and that in his opinion this had not been done by the code of procedure.
Judgment reversed.